**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 01-60378

TWIN CITY FIRE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

VERSUS

CITY OF MADISON, MISSISSIPPI,

Defendant-Counter Claimant-Third Party Plaintiff-Appellant,

HARTFORD FIRE INSURANCE COMPANY; HARTFORD FINANCIAL SERVICES
GROUP, INC.; SPECIALTY RISK SERVICES, INC.; MICHAEL P. DANDINI;
KIMBERLY J. CHABERT,

Third-Party Defendants-Appellees.

Appeals from the United States District Court
For the Southern District of Mississippi

October 28, 2002

Before DUHÉ, DeMOSS and CLEMENT, Circuit Judges.

DUHÉ, Circuit Judge:

Plaintiff Twin City Fire Insurance Company sued its insured, the City of Madison, Mississippi, for a declaratory judgment denying coverage under a policy issued to Madison and for reimbursement of defense costs concerning two lawsuits brought against Madison. After settlement of the underlying claims for

$250,000, Twin City dropped its claim for defense costs and added a claim herein for reimbursement of the settlement amount. Madison counter-claimed asserting coverage under the policy and liability based on estoppel. Madison also asserted third-party tort claims against affiliates of Twin City involved in adjusting Madison's claims.

The district court granted summary judgment to Twin City, holding that a policy exclusion applied so that Twin City was entitled to reimbursement from its insured of the amount paid in settlement of the underlying claims. On the City's counterclaim the court ruled that estoppel cannot create or expand coverage. Granting summary judgment to third-party defendants, the court ruled that Madison failed to show a genuine issue of material fact regarding its third party claims. Madison timely appeals. Finding fact questions material to the issue of estoppel and the third-party claims, except concerning Hartford Financial Services Group, we affirm in part, reverse in part, and remand.

I.

The Public Official Errors and Omissions Liability Insurance Policy issued to Madison covers damages that the City becomes legally obligated to pay because of errors or omissions of public officials. The underlying damage claim was based on the City's 1986 impact fee ordinance ("IFO"), which required housing developers, in order to obtain a building permit, to pay per-lot fees upon filing a preliminary subdivision plat and upon plat

2

approval. Twin City provided Madison a defense under its errors and omissions policy against the claims, with a reservation of rights.

Several developers sued the City in federal district court, asserting various claims pertaining to the IFO. Upon a finding that IFO was a tax, the matter was dismissed for lack of jurisdiction under the Tax Injunction Act. This Court affirmed the dismissal on the jurisdictional ground that the IFO was a tax, not a fee. Home Builders Assoc. of Mississippi, Inc. v. City of Madison, 143 F.3d 1006 (5th Cir. 1998). The developers then sued Madison in state court contending that the IFO violated state law and comprised an unconstitutional taking.

The developers settled their claims with Madison for $250,000. In a separate agreement with Madison, Twin City agreed to pay the settlement amount to the developers, reserving its right to seek recoupment from Madison in this declaratory judgment action.

Twin City contends that the claims are excluded, relying on exclusion 3(h) for "Liability arising out of any insured obtaining remuneration or financial gain to which such insured was not legally entitled." The district court held that the IFO constituted a tax, following the analysis of Home Builders. Further, it found no legislative authority for the tax, and held that the IFO funds were illegal tax revenues. It therefore applied exclusion 3(h) regarding financial gain to which the City was not legally entitled.

This court reviews the grant of summary judgment motion de novo, using the same criteria as the district court, reviewing the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party.  Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992).

We agree with the district court that the underlying claim falls under policy exclusion 3(h),[1] as the IFO was an unauthorized tax and illegal "financial gain."  While Mississippi's Home Rule statute provides municipalities discretion in managing municipal affairs, it also addresses the limited power of a city to tax:

> (1) The governing authorities of every municipality of this state shall have the care, *management and control of the municipal affairs and its* property and *finances*. In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities shall have *the power to adopt any . . . ordinances with respect to such municipal* affairs, property and *finances* which are not inconsistent with the Mississippi Constitution . . . Code . . . or any other statute . . . . *Except as otherwise provided in subsection (2)* of this section, the powers granted to governing authorities of municipalities in this section

---

[1] Madison contends that if estoppel applies, we do not need to address the coverage issue, because the insurer's liability will be a foregone conclusion.  While this may be true in principle, it is not true on summary judgment, because we are not asked to determine whether estoppel applies, but only whether a genuine issue of fact exists pertaining to the question of estoppel.  As discussed later in Part III, we disagree with the district court and find that fact issues do exist which are material to the question of estoppel.  If upon remand a fact finder determines that the insurer is not estopped, however, the district court will be faced with the same question on the exclusion it has already decided.  For this reason, we will review its decision on the exclusion issue as well.

*are complete without the existence of or reference to any specific authority granted in any other statute or law* of the State of Mississippi. . . .

(2) *Unless such actions are specifically authorized by another statute or law of the State of Mississippi, this section shall not authorize the governing authorities of a municipality to (a) levy taxes of any kind* or increase the levy of any authorized tax . . . .

Miss. Code Ann. § 21-17-5 (West 2001) (emphasis added).

Even though under subsection (1) the City's powers of self-governance concerning municipal finances do not depend on any other statutory grant of authority, subsection (2) provides the exception: a municipality's power to levy a tax requires a "specific[] authoriz[ation] by another statute or law." Miss. Code Ann. § 21-17-5. None existed for this IFO. Under a plain reading of this statute, we reject the City's contention that it had authority to enact an IFO as part of the Home Rule Act.

We reject the City's further contention that the power to enact the IFO is impliedly granted by the legislation as a means to an end, or is incident to specific grants of authority to provide services, hospitals, and the like.[2] The power to levy taxes is not embraced in a general grant of power such as police power. <u>Pitts v. Mayor of Vicksburg</u>, 72 Miss. 181, 16 So. 418, 419 (1894). Nor will we characterize the impact fees as a regulatory fee rather than a tax, as Madison urges us to do, to avoid application of the

---

[2] This Court denied the City's motion to certify the question whether a Mississippi municipality can lawfully enact and enforce a developmental impact fee ordinance.

plain terms of the Home Rule Act. Madison has not challenged the factual basis for the district court's characterization of this IFO as a classic tax.

Since the ordinance created a tax, and the City lacked specific authority to impose such a tax, the collection of monies thereunder fits squarely within exclusion 3(h).

III.

Madison contends in its counterclaim that Twin City should be estopped from denying liability under the policy because of various claims handling violations and breach of the duty to defend.[3] When sued by Home Builders for the underlying claims, Madison made a demand upon Twin City for defense and indemnity, assuming the suits were covered under the errors and omissions liability policy. Upon notification of the claims, Twin City appointed Daniel, Coker law firm as counsel for Madison, with a reservation of rights. Terry Levy of Daniel, Coker defended the claims by Home Builders against the City in both the federal and state actions. When an insurer is defending under a reservation of rights, "a special obligation is placed upon the insurance carrier" because of the built-in conflict of interests. Moeller v. American Guar. & Liab. Ins. Co., 707 So. 2d 1062, 1069 (Miss. 1996).

---

[3] As part of a settlement, Madison waived all extra-contractual damages against Twin City (but not third-party defendants, discussed later). The only issue on the counterclaim is whether the offending actions estop Twin City from denying liability under the policy.

6

In support its estoppel claim, Madison points out the conflict of interests between itself and the insurer, in that Levy wanted coverage for his client the City, and Twin City seeks to avoid coverage. Levy reported to both Madison and Twin City's claims adjusters about defense of the matter. Madison contends that Twin City improperly utilized privileged information from Levy's claim file to develop Twin City's position of non-coverage.

The district court concluded that, as a matter of law, estoppel cannot expand coverage in the face of an otherwise applicable policy exclusion. We disagree. When the alleged misconduct of the insurer concerns the duty to defend, the insurer may be liable despite an exclusion otherwise applicable. Upon withdrawal from the defense of an action, for example, an insurer may be estopped from denying liability under a policy, if its conduct results in prejudice to the insured. Southern Farm Bureau Cas. Ins. Co. v. Logan, 238 Miss. 580, 119 So. 2d 268, 272 (1960). Even if the insurer would not have been liable had it not assumed the defense in the first instance, it may become liable for withdrawing, because the assumption of the defense may give rise to a duty to continue with the defense. Id., 119 So.2d at 272. Additionally, a breach of the duty to defend renders the insurer liable to the insured for all damages, including in a proper case the amount of the judgment rendered against the insured.[4]

---

[4] Appleman discusses a number of concepts of waiver and estoppel in the context of insurance policies, see generally 8 Eric Mills

7

Madison's claim about conflict of interests may give rise to estoppel or liability for breach because it concerns the duty to defend. "A law firm which cannot be one hundred percent faithful to the interests of its clients offers no defense at all." Moeller, 707 So.2d at 1071.

The City of Madison complains that the reservation-of-rights letters were insufficient. Twin City's first two letters to Madison did not identify Twin City at all but reserved rights to "Hartford Insurance Co." While the letters recited certain allegations of the complaint and a number of policy exclusions, the only remark about exclusion 3(h) among the list of exclusions in the letters was: "to the extent which the complaint asserts unjust enrichment by the defendants at the expense of the plaintiffs,

---

Holmes, Holmes' Appleman on Insurance 2d § 50.9 (1998), and it is true that some if applied will not expand coverage in the face of a clear exclusion. Id. at 242 ("The doctrine of equitable estoppel is not available to bring within the coverage of an insurance policy risks that are not covered by its terms or that are expressly excluded therefrom."); see also Gilley v. Protective Life Ins. Co., 17 F.3d 775 (5th Cir. 1994) (insurer's letter to an insured that coverage would begin for her son does not waive or enlarge the policy which under its terms does not contemplate such coverage).

The Mississippi Supreme Court provided a useful comparison of two different analyses of waiver in Hartford Accident & Indemnity Co. v. Lockard, 239 Miss. 644, 124 So.2d 849 (1960). For waiver based on an agent's alleged knowledge that the insured used his truck with a trailer, the insurer was not estopped to deny coverage and did not "waive" the clear exclusion of the trailer in the policy. 124 So.2d at 852-55. However, for waiver under the very same policy based on different alleged conduct — refusal to defend — a different analysis applies. Despite the express policy exclusion, the insurer may become liable if the insured was "misled to his hurt or prejudice" by the conduct or representations of the insurer on which he relied. 124 So.2d at 856.

8

Section 3h would serve to exclude coverage for such allegations." The reservation of rights was "as to the issues of coverage identified as well as any other issues which we may become aware of or which may come into existence at a later date."

Although these first two reservation-of-rights letters were delivered shortly after the Home Builders filed the two lawsuits against Madison (November 1995 and October 1998), it was January 2000, with the Home Builders' trial less than a month away, when Twin City sent a third reservation-of-rights letter which identified Twin City as the party reserving rights and informed the insured of its position. This letter stated, "The policy does not provide coverage . . . if Madison enacted the [IFO] without proper authority, or if Madison obtained remuneration or financial gain to which it was not legally entitled. Consequently, Twin City reserves its right to deny coverage under Paragraph 3(h) of the policy." Further, this letter stated that "based on our present understanding of the claims, we believe that in the event of an adverse judgment against Madison, any award of damages likely would not be covered by the policy."

A fact finder might conclude that Twin City did not effectively advise Madison of its opinion that any damages recovered by the Home Builders would not be covered until it sent this letter. If an insurer is defending under a reservation of rights, "the insured should be immediately notified of a possible conflict of interest between his interests and the interests of his

9

insurance company so as to enable him to give informed consideration to the retention of other counsel."  7C John Alan Appleman, <u>Appleman Insurance Law & Practice</u> § 4694 at 365 (1979).  When an insurer is defending under a reservation of rights, the carrier "should afford the insured ample opportunity to select his own independent counsel to look after his interest."  <u>Moeller</u>, 707 So. 2d at 1070.  Here, the reservation-of-rights letters offered no opportunity to the insured to select its own independent counsel.  Rather, they referred the "defense of this entire matter" to Levy's firm.  With this evidence Madison demonstrates an issue for trial, i.e., whether the notice to the insured of the conflict of interests was adequate, clear, and timely.

The evidence leaves room for conflicting inferences regarding not only notice to Madison of the conflict of interests and the right to select its own counsel, but also its alleged consent to continue with Terry Levy as its defense counsel.  Twin City asks us to hold, based on Levy's 27 April 1999 letter[5] and evidence that

---

[5]  A letter of 27 April 1999 from Levy to the Mayor of Madison stated:   "As we discussed, under the Moeller descision [sic], since your insurer, is providing the City a defense but reserving its rights to pay any indemnity for the claim, the City has the option to designate its own counsel to defend the suit at the carrier's expense.  However, it is our understanding that the City believes it is in its best interest for Daniel, Coker . . . to continue the defense of this action.  In light of such, we do not believe there is any conflict of interest in our firm representing the City in this action.  If you ever believe that a conflict does exist in our

Levy conferred with Madison's city attorney about <u>Moeller</u>, that Madison made an informed decision to continue with Levy despite the conflict. Levy's 27 April 1999 letter leaves fact questions about the adequacy of the <u>Moeller</u> notice, because Levy gave his client an opinion that no conflict existed when a bona fide conflict did exist. Further, a fact finder might conclude from Levy's testimony that he was not aware of the conflict himself. Accordingly, the inference could still be drawn that Madison did not give informed consent under those circumstances.[6]

The foregoing might also support an inference that Twin City effectively withdrew the defense or breached the duty to defend. Such conduct could give rise to application of equitable estoppel, preventing the insurer from denying liability under the policy, if Madison can show that the conduct resulted in prejudice to the insured. <u>Southern Farm Bureau</u>, 119 So. 2d at 272.

The evidence presents a genuine issue of fact regarding

---

firms representation of you or you believe we are not representing the City's interest regarding this lawsuit to the City's satisfaction, please advise us of such immediately so we can make sure that the City's interest is being properly protected."
Sealed ex. N.

[6]   We also reject the notion that Madison's city attorney bore responsibility for discerning whether a conflict existed. It was the insurer's choice to defend under a reservation of rights, and by choosing to furnish legal representation for the claims with the single law firm, it created a conflict of interest. <u>See</u> <u>Moeller</u>, 707 So. 2d at 1071. The duty is on the insurer, not the insured, to determine whether a conflict exists and to notify the insured.

11

prejudice, because the very ruling obtained by Levy in favor of the City in Home Builders (that the IFO was a tax) was used against the City in this coverage dispute.  Had it known earlier, the City could have hired its own attorney who might have foregone the jurisdictional tax argument.  A reasonable fact finder might believe that Madison relied on Twin City's conduct in assuming the defense and did not know until three weeks before trial that it had no truly independent counsel.  One might find that Madison learned only within that month before trial that its insurer had hired counsel to defeat coverage, was using Levy's work product against Madison, and was suing Madison for the costs of defense[7] over the past five years.  Moeller recognized that allowing an insured the opportunity to select its own counsel to defend the claim at the insurer's expense can prevent such prejudice as the insurer gaining "'access to confidential or privileged information in the process of the defense which it might later use to its advantage in litigation concerning coverage.'"  Moeller, 707 So. 2d at 1069 (quoting CHI of Alaska, Inc. v. Employers Reinsurance Corp., 844 P.2d 1113, 1116 (Alaska 1993)).

The facts could permit the inference that Madison relied on Twin City's appointment of Levy as counsel, was prejudiced, and has

---

[7] Twin City dropped its claim for the cost of defense early in these proceedings.

compensable damages.[8]  Viewing the summary judgment evidence favorably to Madison, we see the need for a trial, because there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (U.S. 1986).  Because these fact issues are germane to the question whether Twin City discharged its duty to defend or mishandled the claim, they may provide grounds to estop Twin City from denying liability.  Accordingly, we find summary judgment inappropriate on the counterclaim by Madison.

IV.

Madison also asserted bad faith claims handling and tort claims against third-party defendants involved in adjusting Madison's claims, namely, Hartford Fire Insurance Company (Twin City's parent corporation), Hartford Financial Services Group, Inc., Specialty Risk Services, Inc. ("SRS") (a Hartford subsidiary), Michael P. Dandini (a Hartford claims consultant), and Kimberly J. Chabert (an SRS claims consultant).  Madison sued these affiliates of Twin City for grossly negligent claims handling, tortious interference with contract, misrepresentation, fraud, and

---

[8]  As for the contention that Madison cannot show a genuine issue of fact material to damages, Madison's potential liability herein for reimbursement of the $250,000 paid in settlement to the Home Builders constitutes damage enough to defeat summary judgment.  On the verge of trial Madison asked its insurer to settle within the policy limits; had it had the confidence in having an independent attorney, it might have proceeded to trial and obtained a victory.

13

breach of fiduciary duty.

These claims depend in part on the same evidence Madison presents against Twin City on the counterclaim discussed above. Because issues of fact remain, we find summary judgment inappropriate for these defendants as well, excepting Hartford Financial Services Group.[9]

In addition to the issues of fact concerning breach of the duty to defend discussed above, Madison has demonstrated a number of other issues of fact: whether Chabert was involved in both claims analysis and coverage analysis, prejudicing the insured with a conflict of interests; whether Hartford Fire adequately separated claim-handling responsibility from coverage analysis; whether Chabert remained silent about a conflict of interests while developing a strategy of noncoverage; whether Chabert ever told Levy that she and Dandini were involved in coverage, though she instructed him to send them both status reports containing confidential information received from the client, detrimental to coverage; whether Dandini relied on confidential information from Levy's status reports to develop a coverage defense or in deciding to hire independent coverage counsel; whether coverage counsel conducted any investigation besides the one performed by Levy; whether the entire claims file was forwarded to Phelps Dunbar to

_____

[9] As appellees point out, Madison waived any claim against this defendant by not arguing in its opening brief that it has demonstrated an issue for trial concerning this defendant.

14

formulate its non-coverage position; whether third-party defendants relied on Levy's legal defense against the underlying claims[10] to formulate a strategy to defeat coverage in this action; and whether the timing and content of the commencement of this action demonstrated bad faith (claiming defense costs when <u>Moeller</u> plainly precludes such recovery).

These facts in dispute leave a question regarding third parties' gross negligence in claim handling. A fact finder might consider that coverage analysts having unfettered access to privileged information from appointed defense counsel in the presence of an undisclosed conflict support the tort claims asserted herein. Finding no fact issue suggested as to the liability of Hartford Financial Services Group, however, we affirm the summary judgment in favor of that third-party defendant.

V.

---

[10] Twin City specifically challenges Madison's ability to show a genuine issue of fact that anyone relied on Levy's status report or defense strategy. Levy argued in <u>Home Builders</u> that the IFO was a tax rather than a fee for federal jurisdictional purposes under the Tax Injunction Act and won a dismissal on jurisdictional grounds. On appeal from that dismissal, this Court noted Madison's contention that the ordinance fit squarely within the meaning of "tax" as contemplated by the Tax Injunction Act. <u>Home Builders</u>, 143 F.3d at 1010. Although this Court noted that we were not deciding for purposes of other statutes or litigation whether the IFO constituted a tax or fee, 143 F.3d at 1011 n.12, it is abundantly clear that the district court found the tax/fee distinction in <u>Home Builders</u> instructive for state law purposes, and concluded, like <u>Home Builders</u>, that the IFO was a tax not a fee. To that extent a fact finder might conclude that Madison's very argument in those proceedings became the basis for a ruling against it in this coverage dispute.

15

The City's motion to recuse having been filed in the district court *after* this appeal was noticed, the question of recusal is not before this Court.

VI.

Fact issues surround the questions whether Twin City and affiliates notified Madison of the conflict of interests, sufficiently offered Madison the right to Moeller counsel, or used confidential information or Levy's arguments (made earlier on behalf of Madison) against Madison in this action. Summary judgment is not appropriate on the liability issue, because Twin City may be estopped by its conduct from denying liability. Factual issues preclude summary judgment on the claims against third-party defendants as well, with the exception of Hartford Financial Services Group. Accordingly, the judgment of the district court is affirmed in part as to the exclusion and summary judgment in favor of Hartford Financial Services Group, reversed in part, and the matter is remanded.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

16