United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 17, 2003**

Charles R. Fulbruge III
Clerk

REVISED JUNE 19, 2003

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-60414

ACS CONSTRUCTION COMPANY, INC.
OF MISSISSIPPI,

Plaintiff-Appellant,

versus

CGU, FORMERLY KNOWN AS
GENERAL ACCIDENT INSURANCE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi

Before DeMOSS and STEWART, Circuit Judges and FALLON[*], District Judge.

CARL E. STEWART, Circuit Judge:

In this civil action based on diversity jurisdiction, we determine whether on the specific facts of this case, the terms of a commercial general liability insurance policy entitle the Appellant, the insured, to coverage for an incident relating to faulty construction. The Appellee, the insurer, denied coverage for losses asserting that the incident did not constitute an "occurrence" as defined in the

---

[*] U.S. District Judge, Eastern District of Louisiana, sitting by designation.

policy. The Appellant, filed suit against the insurer in Mississippi which was removed to the district court. The parties filed cross summary judgment motions in the district court on the issue of contract liability. The district court granted summary judgment to the Appellee. For the reasons that follow we affirm.

## Factual and Procedural Background

In May 1996, ACS contracted with the U.S. Army Corps of Engineers to construct munitions bunkers at the Pope Air Force Base (the "project") in North Carolina. In July 1996, ACS subcontracted with Chamberlin Co., Inc. to install a waterproofing membrane to the roofs. Chamberlin merged with Southern Commercial Waterproofing Co. of Ala., Inc. (collectively, "Chamberlin/Southern") who accepted all responsibility for the work required under the subcontract. Subsequent to the installation of the waterproofing membrane, leaks developed in the roofs of some of the bunkers. ACS unsuccessfully sought for Chamberlin/Southern to correct the leaks. As ACS was still responsible for the project, it was forced to make the repairs thereby suffering a loss in excess of $190,000.

ACS had a valid commercial general liability (CGL) insurance policy with CGU at all relevant times. The relevant portions of the policy at issue read:

1. Insuring Agreement
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies...

    b. The insurance applies to "bodily injury" or "property damage" only if:
        i. The "bodily injury" or "property damage" is caused by an "occurrence" that take place in the "coverage territory"...

In the definitions section, the policy explains that "occurrence" means "<u>an accident</u>, including continuous or repeated exposure to substantially the same harmful conditions." (emphasis added).

2

According to the contract, the insurance policy does not apply to: " 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Thus, under the plain terms of the contract, "property damage" must be caused by an "occurrence" which is defined as an "accident" in order to trigger coverage.

Consistent with the policy, ACS sought from CGU the loss incurred. CGU determined that no coverage existed under the policy because no "property damage" caused by an "occurrence" took place and therefore, denied ACS's claim. ACS filed suit in Mississippi State Court. CGU removed it to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties filed cross motions for summary judgment on the issue of contract liability. The district court granted CGU's motion for summary judgment finding that there was no "occurrence" such that ACS was entitled to recovery under the policy.

**Analysis**

I.      Standard of Review

We review the district court's order granting summary judgment de novo, applying the same standards that the district court applied. Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 990 (5th Cir. 2001). Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that here is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). As we review, "[f]irst, we consult the applicable law to ascertain the material factual issues." F.D.I.C. v. Firemen's Ins. Co. of Newark, NJ, 109 F.3d 1084, 1087 (5th Cir. 1997). "We look to state law for rules governing contract interpretation." Id. Under Mississippi law, an insurance policy is a contract subject to the general

rules of contract interpretation. <u>Clark v. State Farm Mut. Auto. Ins. Co.</u>, 725 So.2d 779, 781 (Miss. 1998).

The rules of contract interpretation in Mississippi are well settled. Under Mississippi law, the object of contract interpretation is to ascertain the common intent of the parties. <u>Clark</u>, 725 So. 2d at 781. To do so, we must construe the policy as a whole and review the language of the policy giving "operative effect to every provision in order to reach a reasonable overall result." <u>J&W Foods Corp. v. State Farm Mutual Automobile Ins. Co.</u>, 723 So. 2d 550, 552 (Miss. 1998). If after we review the policy, "the policy can be interpreted to have two or more reasonable meanings," then the policy is ambiguous. <u>Id</u>. If this Court finds ambiguity in the language of the insurance policy, then "we must necessarily find in favor of coverage." <u>Id</u>. Moreover, "a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." <u>Titan Indemnity Co. v. Estes</u>, 825 So. 2d 651, 656 (Miss. 2002).

II.     Liability coverage under the CGL insurance policy

A.      Definition of "Occurrence" in the Insurance Policy under Mississippi Law

The core of this dispute is the proper test for determining whether an "occurrence" took place under these set of facts. It is uncontested that the leaks developed because the installation of the waterproofing membrane was faulty. The controversy stems from whether the installation of the waterproofing membrane or whether the consequential leaks constitute an "occurrence" under the CGL insurance policy. The CGL policy defines "occurrence" as an "accident" but does not explicitly define "accident." We must therefore determine whether, under Mississippi law, an "accident" refers to the unintended consequences of installing the waterproofing membrane or whether an "accident" refers to the underlying act of the installation itself.

4

CGU contends that the definition of "accident" proffered under <u>Moulton</u> applies; whereas, ACS contends that the definition proffered in <u>Southern Farm Bureau Casualty Ins. Co. v. Allard</u>, 611 So. 2d 966 (Miss. 1992) applies. The <u>Moulton</u> test is whether the insured intended the <u>underlying action</u>. The <u>Allard</u> test appears to be whether the insured intended the <u>consequences</u> of his actions. In <u>U.S. Fidelity & Guar. Co. v. Omnibank</u>, the Mississippi Supreme Court resolved the so-called tension between <u>Allard</u> and <u>Moulton</u> and reaffirmed its holding in <u>Moulton</u>. 812 So. 2d 196 (Miss 2002). For these reasons, the <u>Moulton</u> test is dispositive of the dispute over the interpretation of an "occurrence" in the CGL policy.

In <u>Moulton</u>, the Mississippi Supreme Court held that "the term accident refers to [the insured's] action and not whatever unintended damages flowed from that act." 464 So. 2d at 510. The issue was whether Allstate had a duty to defend the insured, Moulton, under the insurance policy in an action for malicious prosecution. 646 So.2d at 508. Moulton filed a complaint alleging that Anthony Walls had stolen her dog. Walls was subsequently arrested and brought to trial but the charges were dismissed. Walls then filed a malicious prosecution suit against Moulton. Moulton expected Allstate to defend her under her comprehensive dwelling policy. The language in her insurance policy provided coverage in the event of bodily injury or property damage resulting from an occurrence. Under the policy, an "occurrence" was defined as:

> an accident, including injurious exposure to conditions, which results, during the endorsement period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

<u>Id</u>. Acknowledging that under the terms of the policy, an "occurrence" is defined as an accident, the Mississippi Supreme Court defined "accident." <u>Id</u>. at 509. The Mississippi Supreme Court adopted the following meaning of an "accident" in an insurance policy:

> The only relevant consideration is whether ... a chain of events leading to the injuries complained of was set in motion and followed a course consciously devised and controlled by appellant without the unexpected intervention of any third person or extrinsic force.

Id. (quoting Winkler v. Ohio Casualty Ins. Co., 441 A.2d 1129, 1132 (Md. Ct. Spec. App. 1982)). The Mississippi Court then explicitly rejected the theory that an accident "refers to the unintended consequences of the act." Id. at 510.

Applying Moulton to the present case, the faulty workmanship of the waterproofing membrane resulting in the leaks does not constitute an "occurrence" under the policy. Just as Moulton intended to file a complaint against Wall but may not have intended to cause him embarrassment, ACS intended to hire Chamberlin/Southern to install the membrane but did not intend for the work to be faulty or result in a leak. Although neither the policy, nor the policy language in Moulton were identical to the language in the policy at issue here, Moulton defined the term "occurrence" as it relates to coverage under an insurance policy. See 464 So.2d at 510; Omnibank, 812 So. 2d at 200-01 (applying the Moulton test to determine whether an act was an "occurrence" in a CGL insurance policy).

Although ACS concedes that Moulton "remains the Mississippi Supreme Court's, seemingly complete analysis, of [the] insurance Policy dispute herein," ACS's brief at 40, ACS, nevertheless argues that the law changed when the Mississippi Supreme Court decided Southern Farm Bureau Casualty Ins. Co. v. Allard, 611 So. 2d 966 (Miss. 1992). ACS asserts that the Mississippi Supreme Court, in Allard, suggested that such an "accident" refers to the unintended consequences of the initial act. We are not persuaded that Allard has changed the law. In Allard, the Mississippi Supreme Court relied on the holding of Coleman v. Sanford, 521 So. 2d 876, 878 (Miss. 1988) which stated

6

that "an act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." Allard, 611 So. 2d at 968. The Mississippi Supreme Court focused on the language requiring intent from the standpoint of the insured and determined that the facts of the case created a question for the jury on intent. Because the jury in Allard found that the insured's actions were unintentional, the Mississippi Supreme Court affirmed that the insurance policy provided coverage to the insured. Because the language of the insurance policy in Allard is similar to the language of the CGL policy in the present case, ACS asserts that under this theory, from the standpoint of the insured, ACS's actions were not intentional because it did not desire to cause the consequent leaking.

Notwithstanding the apparent conflict that Allard created when it was decided, the Mississippi Supreme Court very recently reaffirmed its holding in Moulton and resolved the tension between Allard and Moulton. U.S. Fidelity & Gy Co. v. Omnibank, 812 So. 2d 196 (Miss 2002). In Omnibank, the Fifth Circuit certified the following issue to the Mississippi Court:

> [W]hether, under Mississippi law, an insurer's duty to defend under a general commercial liability policy for injuries caused by accidents extends to injuries unintended by the insured but which resulted from intentional actions of the insured if those actions were negligent but not intentionally tortious.

812 So. 2d at 197; See Ramsay v. Omnibank, 215 F.3d 502, 504 (5th Cir. 2000) (certifying the question to the Mississippi Supreme Court in part, to resolve the tension between Allard and Moulton). The Mississippi Supreme Court answered by restating the test it promulgated in Moulton and further clarifying it.

7

In Omnibank, the Mississippi Supreme Court analyzed the identical policy language at issue in this case and addressed the identical arguments proffered by ACS.[2] The Mississippi Supreme Court answered that "according to the policy language, even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy language." Id. Under similar circumstances in the present case, even though the installation of the membrane was done negligently, the action of installing the membrane was not accidental nor unintended to implicate coverage under the policy.

The Mississippi Supreme Court reconciled its decisions in Allard and Moulton concluding that the cases "are consistent in that they both address the nature of the insured party's conduct, not the resulting damages of that conduct." 812 So. 2d at 201. The Mississippi Supreme Court, however, was explicit that "Allard does not constitute a change in the law" and reaffirmed its holding in Moulton. Id.

Nonetheless, ACS further contends that in construing "occurrence" in the CGL policy, the district court overlooked that the exclusions language in the policy renders the coverage language ambiguous. We disagree. Like ACS, the insured in Omnibank contended "that the policy language which implicates coverage for 'occurrences' or 'incidents' is rendered ambiguous by exculpatory language which exempts from coverage for 'bodily injury' or 'property damage' 'expected' or 'intended' from the standpoint of the insured." 812 So. 2d at 198. The Mississippi Supreme Court

---

[2]See 812 So. 2d at 199. The CGL insurance policy language at issue in Omnibank provided in relevant part as follows:

b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory"; ...
12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

specifically rejected this argument and categorically determined that the exception language in the policy does not create ambiguity so as to liberally construe coverage in favor of the insured. Id. at 200. Thus, the district court did not err by not creating ambiguity through the exclusion language of the contract.

This Court construed Moulton for the first time in Berry v. McLemore, 795 F.2d 452 (5th Cir. 1986). In Berry, the insured was injured by a third-party, McLemore. McLemore was a police officer who made a custodial arrest of Berry. When Berry resisted the arrest a fight ensued resulting in McLemore shooting Berry. Berry filed suit and a jury returned a verdict against McLemore awarding punitive and compensatory damages to Berry. When McLemore failed to pay the judgment against him, Berry filed suit against the Town's liability insurer for breaching its duty to defend and for failing to indemnify McLemore against the judgment.

This Court was faced with substantially similar language as the insurance policy in dispute in Moulton. The insurance policy in Berry defined an "occurrence" as "an accident, including continuous and repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." 795 F.2d at 456. This Court relied on Moulton to determine that the incident was not an occurrence under the policy by construing the definition of an "occurrence" as follows:

> [A]n act fell outside of the terms of the policy if 'whether prompted by negligence or malice, (1) defendant's acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within the defendant's foresight and anticipation.

795 F.2d at 457 (quoting Moulton, 464 So. 2d at 509). Applying this definition to the facts of the Berry-McLemore incident, this Court found that McLemore intended to fire his gun and therefore,

9

it "was not an accident as referred to in the policy's definition of an 'occurrence.' " 795 F.2d at 458. This Court rejected the theory that although McLemore intended to fire his gun, he did not intend to cause injury to Berry so as to fall within the terms of coverage under the policy. Instead, as this Court explained "[t]he focus is ... not on the harm caused, but upon the act that caused the harm. The act was the firing of the gun. The gunshot wound was the resulting harm." Id. at 458.

Applying Berry to the facts of this case, no "occurrence" took place. The negligence in installing the waterproofing membrane in the roofs was the foreseeable cause of the leaks that developed. The act of installing the waterproofing membrane fell outside of the terms of the policy because regardless of whether prompted by negligence (1) ACS's acts were committed deliberately and the intervention of Chamberlin/Southern to complete the work was expected; and (2) the likely (and actual) leaking that developed as a result of faulty workmanship was within ACS's foresight.[3] The faulty workmanship of Chamberlin/Southern unfortunately amounts to negligence. Hiring the subcontractors and installing the waterproofing membranes were not accidents under the terms of the policy.

Applying the foregoing Mississippi law, the installation of the waterproofing membrane is the underlying act referenced in "occurrence" which does not trigger coverage under the policy.

B. The definition of "property damage" under the policy

---

[3]WM. C. Vick Construction Co. v. Penn. Nat'l Mutual Casualty Ins. Co., 52 F.Supp.2d 569 (E.D.N.C. 1999) involved Chamberlin providing a faulty waterproofing system as a subcontractor to Vick, the general contractor. Although the case arises under North Carolina law, the law is substantially similar to the law in Mississippi and involves Chamberlin's faulty workmanship as a subcontractor. The district court defined the term "accident" as "unforseen, unexpected, unusual, undesigned, the effect of an unknown cause or an unprecedented consequence" and determined that no occurrence (defined as an "accident") took place to trigger coverage under the insurance policy.

10

In the alternative, CGU contends that the resulting damage did not constitute "property damage" under the policy to trigger coverage. Because we have found that no "occurrence" has taken place, we need not reach this issue. Moreover, the Mississippi Courts have not yet defined "property damage" in a CGL insurance policy as it definitively defined "occurrence" in Omnibank. This Court is Erie-bound to apply Mississippi law to the issue, and because our decision on "occurrence" is dispositive of the breach of contract claim, we do not reach this issue.

III.    The Exclusionary language in the CGL insurance policy

ACS alternatively argues that the district court did not adequately consider the exclusionary language in the insurance policy in order to create coverage. The relevant portions of the policy are as follows:

> 2. Exclusions
> This insurance does not apply to:
>> *j*. Damage to Property
>> "Property damage" to ... (6) that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>> *l*. "Property damage" to "your work" arising out of it or any part of it and included in the "Products-Completed Operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
>
> "Your work" means
>> (a) Work or operations performed by you on or on your behalf; and
>> (b) materials, parts or equipment furnished in connection with such work or operations.

ACS argues that the exception to the exclusion in part 2*l*. means that the faulty work of a subcontractor is an "occurrence" covered by the insurance policy. Overall, ACS contends that the exclusionary language means that the work undertaken by the subcontractors and the fact that the

11

leaks were discovered before the project was completed constituted "property damage" under the policy. As the district court aptly explained, "what ACS seeks from its insurer is a performance bond." Consequently, the district court declined to convert the liability policy into a surety agreement. Moreover, the Mississippi Supreme Court recently explained that the exclusionary language in the policy cannot be used to create coverage where none exists. Omnibank, 812 So.2d at 200. The exclusionary language in the contract cannot be used to create coverage where none exists.

## Conclusion

ACS urges this Court to apply Allard or to look to other jurisdictions arguing that Omnibank failed to reconcile Allard and Moulton and therefore, Allard, the more recent case should take precedence. We cannot agree. Federal jurisdiction arises from diversity in this case. This Court is, therefore, Erie-bound to apply Mississippi law to the issue at dispute. Under Mississippi law, Moulton and Omnibank make clear that in a CGL insurance policy which defines an "occurrence" as an "accident," coverage is triggered if the underlying act was intentional and deliberate. These cases also make clear that an "occurrence" defined as an "accident" in a CGL insurance policy does not refer to the unintended consequences of the act. Thus, the district court did not err when it applied Moulton and Omnibank and concluded that ACS's intent to subcontract with Chamberlin/Southern and its intent to install the waterproofing membrane to the bunker roofs did not constitute an "occurrence" under its CGL insurance policy with CGU to trigger coverage. For the foregoing reasons we AFFIRM the judgment of the district court.

AFFIRM.

12