PER CURIAM: *
This case involves the scope of two different insurers’ obligations to defend and indemnify Hinds County School District (“HCSD”) -with respect to the Coward family’s claims. The two insurers are called Ace American and Acadia. Both insurers filed motions for summary judgment arguing that their respective insurance policies did not cover the Coward family’s claims. The district court granted both motions. The district court also denied HCSD’s motion for leave to amend its pleading to include a counterclaim against Acadia for a breach of the duty of good faith and fair dealing.
As explained below, we affirm the district court’s grant of Ace American’s motion for summary judgment. By contrast, we reverse the district court’s grant of Acadia’s motion for summary judgment. Finally, we affirm the district court’s denial of HCSD’s motion for leave to amend because its proposed counterclaim against Acadia would have been futile.
I.
The Coward family’s daughter, M.L.C., is confined to a wheelchair and lacks control over her arms. The Coward family alleges that while incapacitated, M.L.C. was injured between 2008 and 2009 by a schoolteacher, Louise Miley Johnston, who was employed by HCSD. According to the Coward family, Johnston dropped M.L.C. out of her wheelchair on at least one occa *386 sion. Based on this incident and a number of other acts allegedly committed by Johnston, the Coward family brought claims against HCSD under Mississippi tort law and 42 U.S.C. § 1983. The Coward family’s lawsuit is still pending before the district court. In the present appeal, HCSD argues that two insurers, Ace American and Acadia, are obliged to defend and indemnify HCSD as to the Coward family’s claims.
The first insurer, Ace American, insured HCSD under Scholastic Advantage Educators Legal Liability Policy No. EON G23640806001 (“Ace American Policy”). This insurance policy sets forth a number of exclusions, one of which states that “the Insurer shall not be liable for Damages or Claims Expenses on account of any Claim ... alleging, based upon, arising out of or attributable to any ... Bodily Injury, other than Mental Distress arising out of a Wrongful Employment Practice.” In its order of June 13, 2013, the district court concluded that although the Coward family’s claims for bodily injury did include claims for “Mental Distress,” such claims did not “aris[e] out of a Wrongful Employment Practice.” The district court therefore reasoned that the Ace American Policy did not cover the allegations in the Coward family’s lawsuit and Ace American had no duty to defend HCSD under Mississippi law.
The second insurer, Acadia, insured HCSD during the relevant time under Commercial General Liability Policies CNA 4235393-11 and CNA 4235393-12 (“Acadia Policy”), the relevant provisions of which are identical. In its order of March 29, 2013, the district court concluded that the Coward family’s claims fell outside the scope of the Acadia Policy for three reasons.
First, the Acadia Policy provides that any covered “bodily injury” must be the consequence of an “occurrence,” which the policy further defines as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” As the district court explained, discovery had produced “no evidence” that M.L.C.’s drop from the wheelchair was accidental, rather than the result of an intentional act by Johnston.
Second, the Acadia Policy also excludes from coverage any “expected or intended” injury and any injury arising from “abuse or molestation.” According to the district court, however, the Coward family alleged “a pattern of abuse, which is intentional conduct.” The Coward family’s claims were therefore excluded from coverage under these provisions of the Acadia Policy as well.
Third, the district court found that the Coward family was unable to prove any “bodily injury” that would be covered by the policy. As the district court acknowledged, “the plaintiffs certainly alleged in their complaint that M.L.C. had suffered a variety of bodily injuries.... ” The record, however, contained “no evidence about treatment by doctors for physical injuries or any physical limitations M.L.C. will suffer from the alleged abuse.... Any physical injuries she suffered must be inferred from the fact that she fell to the ground, and even then they appear to be de minimis.” Accordingly, the district court concluded that Acadia was entitled to summary judgment based on the absence of evidence regarding M.L.C.’s injuries.
HCSD appealed the district court’s orders granting summary judgment in favor of Ace American and Acadia. We consolidated HCSD’s two appeals and consider each in turn.
II.
This court reviews a district court’s order granting or denying summary judg *387 ment de novo, applying the same standards as the district court.[1] Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure if the “materials in the record, including depositions, documents, electronically stored information, affidavits or declarations” and other materials do not establish a “genuine dispute as to any material fact.”
We look to state law for rules governing contract interpretation.[2] Under Mississippi law, an insurance policy is subject to the general rules of contract interpretation.[3] In Mississippi, construction of an insurance policy presents a question of law, which we review de novo.[4]
The duty of an insurance provider to defend its insured depends upon the language of the policy.[5] “ ‘The traditional test’ for whether an insurer has a duty to defend under the policy language ‘is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration’ ” in the underlying action.[6] If the factual allegations in an underlying complaint state a claim that is within or arguably within the scope of coverage provided by a policy, then the insurance provider is obligated to defend the insured.[7] Additionally, as held by the Supreme Court of Mississippi in Automobile Insurance Co. of Hartford v. Lipscomb, 75 So.3d 557, 559 (Miss.2011), “the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy’s coverage.” In Mississippi, therefore, an insurer is relieved of its duty to defend where “no genuine issue of material fact” remains as to coverage based on the “language of the policy, the complaint, and the relevant deposition testimony.”[8]
“ ‘[T]he duty to defend is broader than the insurer’s duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy.’ ” [9] But “[ujnlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer’s duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all.”[10] “This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later prov *388 en at trial are covered by the policy.”[11]
III.
We affirm the district court’s order of June 13, 2013, for essentially the reasons stated in the district court’s opinion. Reading the Ace American Policy as a whole, the only claims for bodily injury covered under the Ace American Policy are claims for mental distress experienced by an employee or applicant for employment due to the actions of the employer. Because M.L.C. is not HCSD’s employee, her injuries do not arise from a “Wrongful Employment Practice” under the Ace American Policy.
The Ace American Policy excludes coverage for bodily injury “other than Mental Distress arising out of a Wrongful Employment Practice.” The insurance policy further explains that a “Wrongful Employment Practice” must be predicated on one of thirteen injurious activities. Nearly all of the thirteen injurious activities can logically arise only out of the employment relationship: “wrongful dismissal,” “employment-related misrepresentation,” “wrongful deprivation of a career opportunity,” “wrongful demotion,” “failure to employ or promote,” “employment-related libel,” “defamatory statements in connection with an Employee reference,” and “failure to grant tenure.” Other items on this list are identified using more general terms, such as “discrimination” and “retaliation,” but even these terms are elsewhere defined in the policy to include only injuries to employees or applicants for employment. “Discrimination,” for example, is defined specifically to include only “actual or alleged violation of employment discrimination laws.”
In arguing that the Coward family has alleged a claim based on a “wrongful employment practice” under the Ace American Policy, HCSD has focused on only a single injurious activity from the list of thirteen: “negligent evaluation.” According to HCSD, the Coward family has alleged that HCSD negligently gave the schoolteacher, Johnston, positive performance evaluations. These negligently positive evaluations thereby enabled her to remain in the classroom where she could cause mental distress to students.
We reject HCSD’s argument. In Mississippi, the interpretive principle of ejusdem generis applies both to contractual interpretation as well as to statutory construction.[12] According to this principle, general words listed among an enumeration of specific words “are construed to embrace only those objects similar in nature to those objects enumerated by the ... specific words.”[13] The fact that nearly all of the items on the Ace American Policy’s list of wrongful employment practices could only logically be injurious to an employee suggests that “negligent evaluation” should be construed in this way as well.
This conclusion is supported by the Ace American Policy when it is read “as a whole,” as required under Mississippi law.[14] The Ace American Policy defines damages “arising out of a Wrongful Employment Practice” to include “front pay and back pay,” as well as “liquidated dam *389 ages awarded pursuant to the Age Discrimination in Employment Act of 1967 or the Equal Pay Act of 1983,” but not “employment-related benefits, retirement benefits, perquisites, vacation and sick days ... provided, however, this limitation does not include salary, wages, bonuses, commissions and non-deferred cash incentive compensation....” These detailed provisions, which are only relevant in the context of an employment relationship, suggest that the term “Wrongful Employment Practice” was not intended to encompass injuries arising from the teacher-student relationship.
Finally, this interpretation finds further confirmation in the blanket exclusion for all bodily injury other than mental distress. Young students such as M.L.C., after all, are obviously more likely to experience a bodily injury than a deprivation of back-pay or retirement benefits. It is evident, therefore, that young students were not contemplated as potential victims of “negligent evaluation” or any other wrongful employment practice under the Ace American Policy.
For these reasons, the district court was correct to conclude that the Coward family’s lawsuit is not covered by the Ace American Policy and, therefore, that Ace American has no duty to defend HCSD.[15] Accordingly, the district court’s order granting summary judgment on June 13, 2013, is affirmed.
IV.
We reverse the district court’s order of March 29, 2013, with respect to Acadia’s duties to defend and indemnify. As explained above, the parties dispute primarily whether Johnston’s alleged conduct constitutes an “occurrence” that falls within the terms of the Acadia Policy. In the leading cases, Allstate Ins. Co. v. Moulton, 464 So.2d 507, 510 (Miss.1985), and U.S. Fidelity & Guaranty Co. v. Omnibank, 812 So.2d 196, 198-200 (Miss. 2002), the Supreme Court of Mississippi held that insurance for injury caused by an “occurrence” is triggered only by “accidental” conduct. As explained in Omnibank, 812 So.2d at 201, “a claim resulting from intentional conduct which causes foreseeable harm is not covered [by the term, ‘occurrence’], even where the actual injury or damages are greater than expected or intended.”
We therefore begin our consideration of Acadia’s duty to defend based on whether Johnston’s alleged conduct was accidental or intentional. As demonstrated in Lipscomb, 75 So.3d at 559-61, the Mississippi courts’ analysis of the duty to defend may take into account materials in the record outside the complaint and the insurance policy. In that case, the Supreme Court of Mississippi looked to the “language of the policy, the complaint, and the relevant deposition testimony” to determine whether the insurer possessed a duty to defend the insured against a lawsuit arising from a fire in an apartment building.[16] In particular, the insurance policy in Lipscomb, 75 So.3d at 559-61, excluded injuries “[a]rising out of or in connection with a business engaged in by any insured,” as well as injuries “[a]rising out of the rental or holding for rental of any premises” that were not found specifically at “an insured location.” As the Supreme Court of Mississippi explained, the insured’s own deposition testimony revealed affirmatively that the insured “was operating a business,” that the insured’s “source of income at the time of the fire was his rental properties,” and that the apartment building was not an *390 insured rental property.[17] Accordingly, because “no genuine issue of material fact” existed regarding the applicability of the insurance policy’s exclusions, the Supreme Court of Mississippi held that the insurer had no duty to defend Lipscomb against the underlying claims.[18]
Here, by contrast, a genuine issue of material fact does exist with respect to the applicability of the exclusions in the Acadia Policy. In particular, the Coward family alleged that Johnston dropped M.L.C. out of her wheelchair and onto the ground. This allegation is supported by the written statement of Larina Mason, a physical therapist who worked with Johnston’s students. Although Mason’s statement is ambiguous, we are obliged to construe the evidence and draw all reasonable inferences in the non-movant’s favor at the summary judgment stage.[19] In conducting our present analysis, therefore, we must draw the reasonable inference based on Mason’s written statement that M.L.C.’s fall from the wheelchair was unintended and accidental.
Mason’s written statement contains a number of criticisms regarding Johnston’s attitude of disrespect toward Mason, the other therapists, Johnston’s own teaching assistants, and the students. Only the first paragraph, however, is actually relevant to the incident where M.L.C. was dropped from her wheelchair:
On 9/08/2008 an incident occurred when I asked for assistance to get [M.L.C.] out of her wheelchair and onto a mat on the floor. While I had my back turned putting on gloves, I heard a thud. When I turned around [M.L.C.] was lying on the floor on the mat. Kourtney (assistant in classroom) had transferred her without any help. She commented, “She’s alright. I’m not going to hurt my back bending over.” I did not see her drop [M.L.C.] on the mat, but by her response and the look on Ms. Johnston’s face and the look on [M.L.C.’s] face, I know she didn’t transfer her appropriately.
This paragraph is ambiguous, and the parties have parsed it very differently. According to Acadia, this paragraph means that “Kourtney’s act of dropping M.L.C. ... was not an accident, but was intentionally done by Kourtney to keep her from hurting her own back.” According to HCSD, Mason’s statement is “couched in terms of negligence,” which “supports Plaintiffs’ allegation” that the wheelchair incident was “accidental and/or negligent.” It is also evidently the Coward family’s understanding, based on their complaint in the underlying lawsuit, that it was not HCSD’s assistant teacher, Kourtney, but rather “Ms. Johnston” who “dropped M.L.C.” on this occasion.[20]
*391 Fairly read, this ambiguous paragraph would support any of these proposed interpretations. In particular, because Mason’s written statement describes an incident involving three female individuals, it is difficult to tell for certain who is being described by each use of the pronouns, “she” and “her.” Kourtney may have dropped M.L.C. to avoid hurting her (Kourtney’s) own back and then told Mason that she (M.L.C.) was “alright” (meaning uninjured). Or Kourtney may have been describing Johnston as “alright” (meaning blameless), because her (Johnston’s) help wasn’t actually required to transfer M.L.C. from the wheelchair. Or Johnston might have been the “she” who commented that Kourtney was “alright” (meaning capable of performing the task by herself), which was why Johnston left Kourtney to perform the transfer “without any help” rather than hurting her (Johnston’s) own back.
In other words, the written statement is ambiguous. Where the evidence is “at least ambiguous” with respect to a material issue of fact, as we stated in Carroll v. Metropolitan Ins. & Annuity Co., 166 F.3d 802, 807 (5th Cir.1999), summary judgment must be denied. Here, “[g]iven the ambiguities in the record, the parties’ conflicting versions of the facts, and the competing factual inferences arising from this muddle, the only thing clear is that the appellee could not properly obtain summary judgment on this point.”[21] Although Mason’s written statement is difficult to follow, it does support the reasonable inference that M.L.C. fell from the wheelchair because of accidental conduct by either Johnston or Kourtney. Accordingly, Acadia is not relieved of its duty to defend HCSD based on the term, “occurrence,” in the Acadia Policy or the exclusion for “intended” injury.
Mason’s statement also prevents summary judgment based on the Acadia Policy’s exclusion for “abuse or molestation.” All of the Mississippi decisions cited by the parties have applied “abuse or molestation” exclusions either to sexual conduct[22] *392 or to plainly intentional conduct.[23] Accordingly, if M.L.C. were dropped from her wheelchair accidentally and unintentionally, this would not necessarily be excluded as “abuse” under the Acadia policy. Because “the insurer has a duty to defend when there is any basis for potential liability under the policy”[24] under Mississippi law, the duty to defend is therefore triggered in this case.[25]
Conversely, the fact that the Coward family has explicitly alleged that Johnston subjected M.L.C. to a pattern of “abuse” does not relieve Acadia of the duty to defend. Most critically, under Mississippi law, “[i]n comparing the complaints with the policy terms, we look not to the particular legal theories pursued by the state complainants, but to the allegedly tortious conduct underlying their suits.”[26] Accordingly, even if the Coward family were to characterize a non-abusive act as “abuse,” the Coward family’s characterization would not be dispositive of Acadia’s duty to defend under Mississippi law. Moreover, the Coward family’s complaint does not necessarily include the wheelchair incident within Johnston’s alleged pattern of abuse. Apart from the wheelchair incident, the Coward family has also alleged that Johnston committed numerous other injurious acts.[27] The complaint also repeatedly attributes M.L.C.’s injuries to “negligent and grossly negligent acts or omissions.” Construing the complaint in favor of the nonmovant, HCSD, it is therefore reasonable to conclude that Johnston allegedly committed both a pattern of abusive acts and at least a single non-abusive act when M.L.C. was dropped from her wheelchair.
Additionally, the district court erred by granting summary judgment based on the absence of any “evidence about treatment by doctors for physical injuries or any physical limitations M.L.C. will suffer from the alleged abuse.” The present case is not an instánce such as Lipscomb, 75 So.3d at 559-61, in which deposition testimony affirmatively demonstrated that coverage was excluded under the “rental property” exclusion contained in the applicable insurance policy. Nor is this an instance such as State Farm Mutual Auto. Ins. Co. v. LogistiCare Solutions, LLC, 751 F.3d 684, 692-93 (5th Cir.2014), where the written interrogatories likewise affirmatively demonstrated that the insured received payment for the use of a vehicle and thus fell within the applicable insurance policy’s “for a charge” exclusion.
Here, the district court consulted the record not with respect to an affirmative demonstration that coverage was excluded, but with respect to the absence of evidence. Such an analysis of the duty to defend apparently has no basis in any Mississippi case law. Indeed, such an analysis of the duty to defend would be fundamen *393 tally unfair to the insured. It is, after all, not the insured who is obliged to bring forward evidence of the plaintiffs injury, but the plaintiff. Even if the Coward family has not yet produced evidence of physical injury, they may yet be able to do so during the ongoing proceedings before the district court. As for the complaint itself, as the district court acknowledged, “the plaintiffs certainly alleged in their complaint that M.L.C. had suffered a variety of bodily injuries.” Accordingly, the district court should not have concluded that Acadia was entitled to summary judgment based on the absence of evidence regarding bodily injury.
Finally, with respect to the duty to indemnify, our decision in Barden Mississippi Gaming LLC v. Great Northern Ins. Co., 576 F.3d 235, 239-40 (5th Cir.2009), explained that the duty to indemnify usually should not be evaluated “until the resolution of [the underlying claimant’s] lawsuit.” Similarly, as we explained in Essex Ins. Co. v. Greenville Convalescent Home Inc., 236 Fed.Appx. 49, 52 (5th Cir.2007) (citing Green v. Aetna Ins. Co., 349 F.2d 919, 923-26 (5th Cir.1965)), “[a]ny associated legal questions regarding coverage will be informed by the results of the trial, and the resolution of these questions should also await its conclusion.” Given the particular ambiguity surrounding the key piece of evidence in this case — Mason’s written statement — the usual rule regarding the duty to indemnify should be applied here. As compared with speculation about what the Coward family will or will not be able to demonstrate, or what Mason’s ambiguous written statement might have meant, the evidence actually produced at trial will provide a firmer basis on which to judge whether Acadia must indemnify HCSD under the Acadia Policy.
V.
Turning to HCSD’s counterclaim, the district court did not abuse its discretion by denying HCSD leave to amend its pleading under Rule 15 of the Federal Rules of Civil Procedure. Such leave should not be granted if the proponent of the amendment fails to state a claim upon which relief may be granted.[28]
Invoking the duty of good faith and fair dealing, HCSD argues that Acadia had an obligation to provide “indemnity settlement authority” for the purposes of a mediation on June 20, 2012, to HCSD’s Moeller counsel, who represents the interests of the insured under Moeller v. American Guarantee and Liability Insurance Co., 707 So.2d 1062 (Miss.1996). In HCSD’s view, its attorney should have been authorized to settle the Coward family’s claims not only on behalf of HCSD, but also on behalf of Acadia.
HCSD cites no authority, however, that would support this argument. Indeed, as is illustrated by Twin City Fire Insurance Co. v. City of Madison, MS., 309 F.3d 901 (5th Cir.2002), the insured’s decision to settle and the insurer’s decision to settle are ordinarily two independent decisions in Mississippi.[29] The bad faith alleged in that case involved the insurer’s improper use of privileged information regarding the insured, which had been obtained by the insurer through the insured’s Moeller *394 counsel in order to “develop [the insurer’s] position of non-coverage.”[30] There is no similar allegation in the present case. There is no suggestion that HCSD’s Moeller counsel improperly transmitted any of HCSD’s confidential information to Acadia to help Acadia prepare its case.
Indeed, the duty that HCSD proposes would appear to create a conflict of interest. Under Mississippi law, the Moeller counsel is required to act in the interests of the insured. But HCSD’s theory would vest Moeller counsel with authority to make binding decisions on behalf of the insurer, whose interests — as the Supreme Court of Mississippi recognized in Moeller, 707 So.2d at 1070 — may be adverse to the interests of the insured.
We therefore decline HCSD’s invitation to recognize any duty for the insurer to authorize Moeller counsel to settle claims on the insurer’s behalf. Accordingly, given the absence of legal authority supporting HCSD’s proposed counterclaim, the district court acted within its discretion when it rejected HCSD’s request for leave to amend.[31]
VI.
For the reasons set forth above, we AFFIRM the district court’s grant of Ace American’s motion for summary judgment and REVERSE the district court’s grant of Acadia’s motion for summary judgment. We therefore REMAND for further proceedings in accordance with this opinion. We also AFFIRM the district court’s denial of HCSD’s motion for leave to amend.
AFFIRMED in part, and REVERSED and REMANDED in part.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. ACS Constr. Co., Inc. of Miss. v. CGU, 332 F.3d 885, 887-88 (5th Cir.2003).

. F.D.I.C. v. Firemen's Ins. Co. of Newark, NJ, 109 F.3d 1084, 1087 (5th Cir.1997).

. See Clark v. State Farm Mut. Auto. Ins. Co., 725 So.2d 779, 781 (Miss.1998); Essex Ins. Co. v. Greenville Convalescent Home Inc., 236 Fed.Appx. 49, 50-51 (5th Cir.2007).

. State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC, 751 F.3d 684, 688 (5th Cir. 2014) (citing Farmland Mut. Ins. Co. v. Scruggs, 886 So.2d 714, 717 (Miss.2004)).

. Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 403 (Miss. 1997).

. Id. (quoting State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So.2d 805, 808 (Miss.1970)).

. Ingalls Shipbuilding v. Fed. Ins. Co., 410 F.3d 214, 225 (5th Cir.2005); Am. Guar. & Liab. Ins. Co. v. 1906 Co., 273 F.3d 605, 610 (5th Cir.2001).

. Lipscomb, 75 So.3d at 560-61.

. LogistiCare, 751 F.3d at 692; Titan Indem. Co. v. Pope, 876 So.2d 1096, 1101 (Miss.App. 2004) (quoting Merchants Co. v. Am. Motorists Ins. Co., 794 F.Supp. 611, 617 (S.D.Miss. 1992)).

. LogistiCare, 751 F.3d at 692 (quoting Estate of Bradley v. Royal Surplus Lines Ins. Co., 647 F.3d 524, 529 (5th Cir.2011)).

. Id.

. See Morgan v. State ex rel. Dist. Atty., 208 Miss. 185, 44 So.2d 45, 48-49 (1950); City of Hernando v. N. Mississippi Util. Co., 3 So.3d 775, 787 (Miss.Ct.App.2008).

. Flye v. Spotts, 94 So.3d 240, 245 (Miss. 2012) (citation omitted).

. See Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987) (citing Hines Motor Co. v. Hederman, 201 Miss. 859, 30 So.2d 70, 72 (1947)).

. See Delta Pride, 697 So.2d at 403.

. Lipscomb, 75 So.3d at 560-61.

. Id. at 560 & n. 9.

. Id. at 559-61.

. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir.2004) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

. It is worth acknowledging that the Coward family's complaint does not mention Kourtney, but rather attributes responsibility for dropping M.L.C. solely to Johnston. Given the ambiguities in Mason’s written statement, however, we think that the Coward family’s complaint could hypothetically withstand summary judgment even based on its allegation regarding Johnston. Whatever the most elegant reading of Mason’s written statement might be, it is at least a reasonable inference that Mason was referring to Johnston rather than Kourtney when she wrote, "I know she didn’t transfer her appropriately” after M.L.C. was transferred "without any help.”
In any event, we are not faced at present with a motion for summary judgment against the Coward family. In this appeal, we are evaluating only Acadia’s duty to defend, and Acadia has never once argued that coverage is *391 excluded because Johnston, rather than Kourtney, was the HCSD employee identified in the Coward family’s complaint. See Acadia Br. 44. The reason is clear enough: Kourtney was also an employee of HCSD. As provided under Lipscomb, 75 So.3d at 559, the Mississippi courts' analysis of the duty to defend takes into account not just the allegations in the complaint, but also "the true facts” of which "an insurer becomes aware” through "independent investigation.” If Kourtney, rather than Johnston, was revealed by Acadia’s investigation to be responsible for dropping M.L.C., then HCSD is potentially liable under the same agency theory invoked by the Coward family as to Johnston. At least as described in Mason's written statement, both Johnston and Kourtney were apparently acting within the scope of their employment as HCSD’s teacher and assistant teacher when they transferred (or failed to transfer) M.L.C. from her wheelchair. Estate of Brown By & Through Brown v. Pearl River Valley Opportunity, Inc., 627 So.2d 308, 311 (Miss. 1993) (”[A]n injury arises out of an employment when ... there is a causal connection between such injury and the conditions under which the work is required to be performed.”); see also Cockrell v. Pearl River Valley Water Supply Dist., 865 So.2d 357, 361-62 (Miss.2004). The identity of the HCSD employee who allegedly dropped M.L.C., therefore, has no consequences in the present appeal.

. Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc., 669 F.2d 1026, 1032 (5th Cir.1982); see also Bailey v. O'Donnell, 980 F.2d 1445, 1992 WL 366469, at *2 (5th Cir. 1992).

. See, e.g., Lincoln Cnty. Sch. Dist. v. Doe, 749 So.2d 943, 945 (Miss.1999); Titan Indem. Co. v. Williams, 743 So.2d 1020, 1022 (Miss. Ct.App.1999); see also Cincinnati Ins. Co. v. Markel Am. Ins. Co., CIVA 307CV168-WHBLRA, 2008 WL 2415248, at *11 (S.D.Miss. June 11, 2008); Am. Nat. Gen. Ins. Co. v. L.T. Jackson, 203 F.Supp.2d 674, 678 (S.D.Miss.2001).

. See Maryland Cas. Co. v. Nestle, 1:09 CV 644-LG-RHW, 2010 WL 3735756, at *1 (S.D.Miss. Sept. 17, 2010).

. Titan Indent., 876 So.2d at 1101.

. See Delta & Pine Land Co., 530 F.3d at 399 ("As long as the claim is ‘arguably’ covered by the insurance policy, the duty to defend is triggered.”).

. Am. Guar. & Liab. Ins. Co., 273 F.3d at 610.

. As alleged by the Coward family, the schoolteacher also (1) "use[d] unnecessary force” to prevent M.L.C. "from flapping her arms,” (2) "struck” M.L.C. "when she was tying her feet to the foot rest,” (3) threw a ball at M.L.C.'s face, (4) sprayed M.L.C.’s face with a can of aerosol body spray, (5) grabbed M.L.C.'s face, and (6) was verbally cruel and abusive to M.L.C. on many occasions. See Complaint ¶ 10 (Case No. 3:12-cv-188, Rec. Doc. 14-1); Complaint ¶¶ 9-12 (Case No. 3:12-cv-188, Rec. Doc. 14-5); Amended Complaint ¶9 (Case No. 3:12-CV-731, Rec. Doc. 1-1).

. Marucci Sports, L.L. C. v. Nat’l Collegiate Athletic Ass’n, 751 F.3d 368, 378 (5th Cir. 2014); Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir.2000).

. Twin City Fire, 309 F.3d at 904 ("The [plaintiffs] settled their claims with [the insured] for $250,000. In a separate agreement with [the insured], [the insurer] agreed to pay the settlement amount to the [plaintiffs], reserving its right to seek recoupment from [the insured] in this declaratory judgment action.”) (emphasis added).

. Id. at 905-06.

. Marucci, 751 F.3d at 378; Stripling, 234 F.3d at 873.